UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LANCE W. L.,[1] | Case No. 1:23-cv-00089-CWD |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| MARTIN J. O'MALLEY, Commissioner of Social Security Administration,[2] | |
| Defendant. | |

## INTRODUCTION

Plaintiff filed a Complaint with the Court seeking judicial review of the Commissioner's denial of his application for a period of disability and disability insurance benefits, and for supplemental security income. (Dkt. 1.) The matter is fully briefed and at issue. (Dkt. 15, 20, 23.) Having carefully reviewed the parties' memoranda and the entire administrative record ("AR"), the Court will remand the decision of the Commissioner for the reasons explained below.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Martin J. O'Malley was sworn in as the Commissioner of Social Security Administration on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley will be substituted as the Respondent in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## BACKGROUND

On October 9, 2018, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income, claiming disability beginning September 13, 2018. (AR 24.) At the time of the alleged disability onset date, Plaintiff was 52 years of age. (AR 39.)

The application was denied initially and on reconsideration, and a telephone hearing was conducted on June 25, 2020, before Administrative Law Judge (ALJ) David Willis. (AR 24 - 41.) At the hearing, Plaintiff amended his alleged onset date to October 1, 2018. (AR 24.) After considering testimony from Plaintiff and vocational expert (VE) Cassie Mills, the ALJ issued a decision on August 6, 2020, finding Plaintiff had not been under a disability from October 1, 2018, through the date of the decision. (AR 41.) Plaintiff timely requested review by the Appeals Council, which denied his request for review on July 2, 2021. (AR 1 – 6.)

Plaintiff timely appealed the August 6, 2020 decision to the Court on August 23, 2021. (AR 702 – 704.) Pursuant to the stipulation of the parties, the Court reversed and remanded the matter for additional administrative proceedings, instructing that the ALJ must further evaluate the medical source opinion of Dr. Graham and the Plaintiff's subjective symptom testimony. (AR 695, 707 – 708.)

The Appeals Council issued an order on March 14, 2022, specifically instructing the ALJ to:

- Give further consideration to the medical source opinion of Dr. Graham pursuant to the provisions of 20 C.F.R. §§ 404.1520c and 416.920c.

- Further evaluate the claimant's alleged symptoms and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 C.F.R. §§ 404.1529 and 416.929).

(AR 747.) The Appeals Council found that the ALJ did not explain how he incorporated the portions of Dr. Graham's opinion that he found persuasive into the RFC.[3] Concerning Plaintiff's symptom testimony, the Appeals Council found that the ALJ summarized the medical evidence and Plaintiff's allegations, but did not identify the specific testimony he found not persuasive and did not link the testimony to the particular medical records supporting the adverse determination; did not acknowledge conflicting testimony concerning Plaintiff's ability to drive to visit family, which revealed his wife drove; and did not reconcile Plaintiff's testimony that he lacked insurance with the ALJ's conclusion that the record showed lack of treatment. (AR 747.)

In the interim, Plaintiff filed another application for Title II benefits, alleging a disability onset date of August 7, 2020. (AR 708.) This application was granted. (AR

---

[3] In particular, the Appeals Council found the ALJ's RFC contradicted the opinions of Dr. Graham that the ALJ found persuasive:

> The Administrative Law Judge found Dr. Graham's opinion that the claimant would need to be able to change positions to be persuasive (Decision at 14). Yet, while Dr. Graham indicated that the claimant would "need to be able to change positions as needed for pain relief" (Ex. B4F/1), the residual functional capacity finding indicated "after standing or walking for 30 minutes, he will need to sit for up to 15-30 minutes throughout the workday" (Decision at 9). The Administrative Law Judge also found Dr. Graham's opinion regarding the claimant's lifting ability to be persuasive (Decision at 14). Yet, while Dr. Graham indicated that the claimant was limited in his ability to regularly lift or move up to 10 pounds (Ex. B4F/3), the residual functional capacity finding indicated the claimant could lift "no greater than 10 pounds frequently" (Decision at 9).

(AR 746 – 47.)

**MEMORANDUM DECISION AND ORDER - 3**

708.) Accordingly, the period of disability to be adjudicated in the instant claim is from October 1, 2018, to August 6, 2020. (AR 625 – 640, 708.)

On remand, ALJ Willis conducted a telephone hearing on November 15, 2022, and considered testimony from Plaintiff and VE Richard Ostrander. (AR 625.) ALJ Willis issued an unfavorable decision on December 29, 2022, finding Plaintiff was not under a disability from October 1, 2018, through August 6, 2020. (AR 625 – 640.) Plaintiff next timely appealed this final decision to the Court on March 3, 2023. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have the power to enter…a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The Court must uphold the ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id.*

MEMORANDUM DECISION AND ORDER - 4

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id.*

## THE ALJ'S ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step[4] sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 1, 2018. (AR 628.) At step two, the ALJ found Plaintiff had the following medically determinable, severe impairments: "fibromyalgia,

---

[4] *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013), sets forth the five-step review process as follows: "The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v)."

degenerative disc disease (lumbar spine), and chronic obstructive pulmonary disease

(COPD)." (AR 628.) Concerning Plaintiff's cervical spine and shoulder impairments, the

ALJ found that these impairments were non-severe. (AR 629 - 630.)

At step three, the ALJ determined that Plaintiff did not have an impairment or

combination of impairments which met or were medically equal to Listing 1.15

(Disorders of the skeletal spine resulting in compromise of a nerve root(s)); Listing 1.16

(Lumbar spinal stenosis resulting in compromise of the cauda equina); or Listing section

3.02 (Chronic Respiratory Disorders). (AR 631.) The ALJ indicated he considered

Plaintiff's fibromyalgia in formulating Plaintiff's residual functional capacity (RFC). (AR

631.)[5]

At step four, the ALJ concluded that, from October 1, 2018, through August 6,

2020, Plaintiff retained the residual functional capacity (RFC) to perform light work[6] as

---

[5] The ALJ referenced SSR 12-2p, which provides guidance on how fibromyalgia is evaluated under the Social Security Act, in his analysis at step two. (AR 629.)

[6] The Dictionary of Occupational Titles defines light work as follows:

> Light Work - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

Dictionary of Occupational Titles Appendix C-Components of the Definition Trailer, 1991 WL 688702. The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. SSR 83-10, *available at* 1983 WL 31251.

**MEMORANDUM DECISION AND ORDER - 6**

defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with the following additional

limitations:

> He could never climb ropes or scaffolds. He could
> occasionally balance, stoop, kneel, crouch, crawl, or climb
> ladders, ramps, or stairs. He needed to avoid even moderate
> exposure to unprotected heights and moving mechanical
> parts. He needed to avoid concentrated exposure to vibration,
> extreme heat, extreme cold, fumes, odors, dusts, and
> pulmonary irritants….

(AR 631 – 632.)[7]

The ALJ found that, because of Plaintiff's exertional limitations, his ability to

perform work at all exertional levels was compromised, and that he could no longer

perform his past relevant work as a construction laborer and heavy equipment operator.

(AR 638.) Relying upon testimony from the vocational expert, the ALJ determined at

step five that jobs exist in significant numbers in the national economy that Plaintiff

could perform given his age, education, work experience, and RFC, such as: Cashier II;

sales attendant; and office helper. (AR 639.) If Plaintiff were further limited in his ability

to interact with the public and coworkers, the ALJ determined there would be

representative jobs available such as assembler/small products II; assembler/electrical

---

[7] In ALJ Willis's prior decision, he found that Plaintiff could perform light work with the
following limitations:

> He can lift, carry, push, or pull 20 pounds occasionally and no greater than 10
> pounds frequently. He can sit for up to six hours, stand for up to six hours, or
> walk for up to six hours in an eight-hour day; however, after standing or walking
> for 30 minutes, he will need to sit for up to 15-30 minutes throughout the
> workday. He can never reach overhead bilaterally as part of a job, but can reach
> in all other directions frequently….

(AR 32.)

**MEMORANDUM DECISION AND ORDER - 7**

assembly; and sub-assembler. (AR 639.) The ALJ therefore determined that Plaintiff had not been under a disability from October 1, 2018, through August 6, 2020. (AR 639.)

**DISCUSSION**

Plaintiff raises the following issues on appeal:

1.  Whether the ALJ erred in his evaluation of Plaintiff's subjective symptom testimony.

2.  Whether the ALJ erred in his evaluation of Dr. Graham's medical source opinion.

Because of these errors, Plaintiff contends the RFC was not supported by substantial evidence. No other issues are raised by Plaintiff on appeal.

**1.     Subjective Symptom Testimony**

Plaintiff argues that the ALJ failed to identify and link the testimony that he found inconsistent with the record to particular parts of the record supporting his determination; misrepresented the medical records; and, did not provide an analysis as to how Plaintiff's daily activities supported a finding that he could return to full-time competitive employment or otherwise contradicted his testimony. Defendant contends the ALJ reasonably found that Plaintiff's subjective symptom testimony was inconsistent with the medical evidence, which showed improvement with treatment; a limited approach to treatment; and activities inconsistent with the degree of impairment alleged.

**A.     *Legal Standard***

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." Social Security Ruling (SSR) 16-3p, *available at* 2017

WL 5180304, at *6 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). *See also Smartt v. Kijakazi*, 53, F.4th 489, 494 (9th Cir. 2022) (articulating the clear and convincing standard); *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (setting forth the two-part test). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). An ALJ must identify the testimony that

is found not credible and link that testimony to the particular parts of the record supporting the non-credibility determination. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Failure to do so is legal error. *Id*.

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

**MEMORANDUM DECISION AND ORDER  - 10**

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all of the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### B.    *Analysis*

Plaintiff testified[8] that he was unable to work full-time because of interruptions from and an inability to persist due to pain. (AR 55.) He also testified that his COPD caused shortness of breath with activity, such that he had to stop walking after 50 yards or so to catch his breath. (AR 56, 662.) Plaintiff testified that he used his rescue inhaler up to eight times each day, and it took 20 – 30 minutes before it "kicked in." (AR 59.)[9] He testified that his back pain was limiting such that he used a cane[10] for support. (AR 660.)[11]

The ALJ summarized Plaintiff's subjective symptom testimony, followed with a conclusion that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning

---

[8] Plaintiff testified at two hearings – the first was held on June 25, 2020, and the second on November 15, 2022, following remand.

[9] At the November 15, 2022 hearing, Plaintiff testified he used his rescue inhaler up to five times each day. (AR 662.)

[10] The cane was not prescribed. (AR 661.) Plaintiff had a laminectomy in April of 2021. (AR 667.)

[11] Plaintiff also testified that he suffered from depression as a result of feeling useless and unable to provide for his family. (AR 62, 663.) He takes medication to treat his depression, which has helped alleviate his symptoms. (AR 63, 663 – 64.) Plaintiff did not challenge the ALJ's analysis of Plaintiff's subjective symptom testimony concerning his mental health impairments.

MEMORANDUM DECISION AND ORDER  - 11

the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 633.). The ALJ next proceeded to summarize the records pertinent to Plaintiff's medical care between October of 2018 and August of 2020. (AR 633 - 635.) At the end of this summary, the ALJ concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of his pain symptoms, psychiatric symptoms, and pulmonary function were inconsistent with treatment provider notes. (AR 635.) While the ALJ acknowledged Plaintiff's lack of funds, he concluded medical records showed Plaintiff saw his doctor regularly, obtained appropriate diagnostic imaging and testing, improved with treatment, and did not seek additional low or no-cost health care. (AR 635.) Last, the ALJ found Plaintiff performed a "range of daily activities" inconsistent with Plaintiff's allegations of disabling pain and other symptoms. (AR 636.)

The Court agrees with Plaintiff that the ALJ's reasoning was insufficiently specific, and finds that the ALJ incorrectly applied the standard for evaluating symptom testimony. A reviewing court should "not fault the agency merely for explaining its decision with 'less than ideal clarity,'" however, "we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d 1090, 1099 (9th Cir. 2014)). Here, the ALJ did not specify "which…testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. He did not explain what portions of the medical record conflicted with which portions of Plaintiff's

subjective symptom testimony about Plaintiff's pain and other symptoms, and his

inability to persist throughout an eight-hour workday.

Rather, the ALJ recounted the medical record evidence, but did not use that

evidence to meaningfully evaluate Plaintiff's subjective symptom testimony about his

pain and other symptoms or link the medical evidence to any specific testimony. This

was legal error. *See Brown-Hunter*, 806 F.3d at 489 (holding that a general rejection of

claimant's testimony was an insufficient basis for an adverse credibility determination

and that the ALJ committed legal error when she did not specify what testimony she

rejected and why); *Treichler*, 775 F.3d at 1102-03 ("The ALJ did not…specifically

identify the testimony he found not credible….This was error and falls short of meeting

the ALJ's responsibility to provide a discussion of the evidence and the reason or reasons

upon which his adverse determination is based.") (quotation marks omitted); *Ammie B. v.

Saul*, 2020 WL 1984894, at *8 (D. Or. Apr. 27, 2020) (concluding that summarizing the

medical record but failing to link it to any specific testimony is legal error). This error,

alone, is reason enough to remand this case. *Benjamin M. v. Kijakazi*, No. 6:20-cv-1058-

SI, 2021 WL 4709723, at *4 (D. Or. Oct. 8, 2021).

Moreover, the Court finds the ALJ erroneously rejected Plaintiff's testimony on

the ground that medical records showed only "mild" symptoms that did not corroborate

the degree of symptoms Plaintiff reported. (AR 635.) However, such evidence is not

required. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Plaintiff need only show

that his physical impairments could "reasonably have caused some degree of the

symptom," in this case pain and shortness of breath. *Id*. But the ALJ may not reject

subjective symptom testimony simply because "there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." *Id.* Here, the ALJ did just that, committing error, as explained below.

For instance, the ALJ found Plaintiff's statements about the limiting effects of his pain inconsistent, because treatment providers did not observe more than "mild" muscle or joint symptoms. (AR 635.) But, Plaintiff produced objective medical evidence of physical impairments affecting his low back and cervical spine, and treatment for fibromyalgia. For instance, imaging dated June 6, 2018, four months prior to the alleged onset date, showed a 3mm grade 1 retrolisthesis of L4 on L5 and of L5 on S1, with mild disc height loss and mild anterolateral endplate osteophytosis at multiple levels. (AR 633, 524 – 25.) On October 24, 2018, Plaintiff reported numbness and tingling down his left leg, and his treatment provider noted an antalgic gait. (AR 512 – 13.) On January 22, 2019, Plaintiff reported low back pain with radiation into the left leg, and intermittent pain in the upper back and arms. (AR 572 – 73.)

Additionally, Dr. Graham noted decreased range of motion in the shoulders bilaterally; knees bilaterally; and lumbar region, and observed "significant pain with standing up, moving around" and an antalgic gait. (AR 573.) On May 7, 2019, Dr. Graham charted Plaintiff's complaints of neck and low back pain, diffuse muscle pain and nerve/stabbing type pain. (AR 571 – 72.) Although the ALJ noted Dr. Graham did not observe any physical function abnormalities at this visit, he neglected to point out that Dr. Graham did not conduct a full physical examination. (AR 572.)

**MEMORANDUM DECISION AND ORDER - 14**

An emergency department visit on July 17, 2019, documented Plaintiff had suffered a fall, and lumbar spine imaging showed retrolisthesis of L2 on L3, L4 on L5 and L5 on S1 was unchanged; partial ankylosis of the sacroiliac joints bilaterally; mild disc height loss at L1-L2; mild disc height loss at L4-L5 with small symmetric disc bulge and minimal facet arthropathy, flattening of ventral thecal sac, and mild bilateral neural foraminal stenosis; and mild disc height loss at L5-S1 with severe left subarticular zone narrowing, mild to moderate right neural foraminal stenosis, and moderate left neural foraminal stenosis. (AR 633, 578.) Examination findings noted full lumbar range of motion with pain across the lower back on palpation, and the provider charted severe left subarticular zone narrowing at L5-S1. (AR 568, 569.) Examination findings dated July 23, 2019, noted positive single leg raise on the left; decreased range of motion and tenderness at the left lower back; and the physician charted Plaintiff's complaints of pain down the left leg, neck pain, and fibromyalgia pain that was not relieved with Tramadol or gabapentin. (AR 566.)

Cervical spine radiographs dated February 26, 2020, documented mild degenerative disc disease from C4-C7, with trace anterolisthesis of C6 on C7. (AR 590.) Medical records also reflected that Plaintiff underwent a right rotator cuff repair in 2004. (AR 567.) Records dated June 11, 2020, document Plaintiff had fallen twice in the past month, injuring his right shoulder. (AR 618.) Examination revealed decreased range of motion, passive full range of motion with pain, some give way weakness with pain, and pain with empty can testing. (AR 619.) Radiographs revealed no acute findings. (AR 621.)

**MEMORANDUM DECISION AND ORDER - 15**

As for his COPD, on March 6, 2020, Plaintiff reported wheezing, cough, and shortness of breath when active. (AR 634, 613.) At this office visit, Dr. Graham charted that Plaintiff was in no respiratory distress, but that rhonchi were present. (AR 613 – 14.) Inhalers were prescribed. (AR 614.) On April 17, 2020, Plaintiff reported shortness of breath with activity and no shortness of breath at rest. (AR 594.) A physical examination was not conducted because this visit occurred via video. (AR 594.) Plaintiff reported some improvement with use of inhalers. (AR 594.) A pulmonary function test dated July 10, 2020, documented air trapping with a mildly reduced TLC confirming combined restrictive/obstructive defect, with diffusion mildly reduced consistent with loss of alveolar-capillary surface area. (AR 842.) Following the administration of an inhaled bronchodilator, testing showed a "significant response." (AR 842.) The results from July of 2020 showed decreased lung function since a prior test dated March 27, 2015. (AR 842.)

Plaintiff's impairments, documented by objective medical imaging and testing, as well as by examination findings, could reasonably produce pain and shortness of breath upon exertion. Plaintiff testified that the effects of his pain prevented him from sitting for longer than 30 minutes and standing for more than ten minutes; caused him to need to change positions every 30 to 60 minutes; prevented him from reaching above shoulder height; required breaks; and limited his ability to kneel, squat, bend, or lift objects heavier than 10 pounds. (AR 632 – 34.) He also testified that exertion and physical activity caused shortness of breath. (AR 633.) Plaintiff met his burden to show that his impairments could reasonably have caused some degree of his symptoms – no more was

required, especially considering pain is highly subjective. *Smolen*, 80 F.3d at 1283. But the ALJ impermissibly focused on whether Plaintiff's physical impairments could have caused the severity of symptoms that Plaintiff alleged, and in turn, the ALJ erroneously discredited Plaintiff's testimony on the grounds that the degree of Plaintiff's pain and shortness of breath was not supported by the objective medical evidence. *Smolen*, 80 F.3d at 1282 (ALJ may not reject subjective symptom testimony simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged).

The ALJ next noted evidence of improvement in Plaintiff's condition with prescription pain medication and inhalers. (AR 635.) Defendant asserts that evidence of medical treatment successfully relieving symptoms can undermine a claim of disability. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (citing 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1)). However, an examination of the medical records from 2019 and early 2020, upon which the ALJ relied, do not appear to support the ALJ's first conclusion that Plaintiff's allegations of postural limitations and the need to change positions to relieve pain were undermined by reports of improvement upon taking prescription medication. (AR 635.)

For instance, on January 22, 2019, Plaintiff reported his low back pain and neck pain had worsened, together with numbness and tingling down the left leg. (AR 574.) At that time, Plaintiff was taking over the counter pain medication due to his lack of funds. (AR 574.) A later progress note dated May 7, 2019, documents Plaintiff reported "some benefit" from tramadol, but "generally still ha[d] a fair amount of pain," and was "still limited in activity." (AR 572.) Plaintiff also reported that he was not sure gabapentin had

MEMORANDUM DECISION AND ORDER  - 17

been helpful. Plaintiff reported pain in his neck, low back, and diffuse muscle pain. (AR 572.)

Records from July 17, 2019, indicate Plaintiff complained of chronic pain and numbness in his left leg, which had worsened after a fall. (AR 566.) Records dated January 13, 2020, document Plaintiff reported his pain was not controlled despite continuing to take tramadol. (AR 565.) Later treatment records reveal Plaintiff underwent a right L4-5 hemilaminotomy and microdiscectomy on April 29, 2021. (AR 1162.)[12] Thus, at best these records show one report of "some" improvement after being prescribed pain medication, but thereafter, worsening pain associated with falls, no pain control on tramadol, and an eventual surgery to address Plaintiff's low back pain symptoms. The overall diagnostic record is therefore consistent with Plaintiff's testimony, and does not support the ALJ's conclusion that Plaintiff's pain improved upon taking prescription medication.

Similarly, the ALJ did not credit Plaintiff's testimony about the severity of his symptoms related to COPD. (AR 635.) The ALJ found Plaintiff's testimony was inconsistent with medical records indicating Plaintiff "neither reported nor displayed breathing problems." However, the records the ALJ cited in support of this conclusion were generally prior to 2020, while the records reveal that Plaintiff did not complain of worsening shortness of breath until March of 2020. Further, consistent with Plaintiff's

---

[12] Although this record is outside the period of disability under consideration, the Court finds it has some relevance for evaluating whether prescription pain medication adequately controlled Plaintiff's pain symptoms. The fact Plaintiff eventually underwent surgery to address his pain provides support for Plaintiff's testimony that prescription pain medication was not adequately controlling his pain.

complaints of shortness of breath upon exertion, Plaintiff would not have displayed breathing problems during a sedentary office visit.

The ALJ also reasoned that Plaintiff demonstrated improvement with inhalers. While the record confirmed a significant response following administration of an inhaled bronchodilator during pulmonary function testing, the Court does not find this evidence inconsistent with Plaintiff's testimony that he suffered shortness of breath on exertion. (AR 1704.) Plaintiff's test results confirmed an obstructive disorder with air trapping with improvement after administration of a bronchodilator. (AR 1704.) Plaintiff testified that it took 20 – 30 minutes before he saw improvement in his shortness of breath following use of his inhaler. In other words, the Plaintiff did not deny improvement upon use of his inhaler; rather, he testified that activity caused shortness of breath, and it took time before he could catch his breath following administration of medication. The ALJ failed to reconcile this testimony with his conclusion that Plaintiff could sustain the walking and standing demands of full-time light work, without more than the typical number of breaks allowed.

Defendant next claims that the ALJ properly supported his analysis of Plaintiff's subjective symptom testimony by noting Plaintiff's limited approach to treatment. Def.'s Brief at 6. (Dkt. 20). Defendant asserts that an "unexplained, or inadequately explained, failure to…follow a prescribed course of treatment" can undermine a plaintiff's testimony about the severity of his symptoms. *Id.* (citing *Fair v. Bowen*, 885 F.2d 597, 603 – 04 (9th Cir. 1989). However, the ALJ did not proffer this as a reason to discredit

Plaintiff's testimony. (AR 635.) Rather, the ALJ noted Plaintiff saw his doctor regularly and underwent appropriate diagnostic imaging and testing. (AR 635.)

Finally, the Court finds the record regarding Plaintiff's activities of daily living does not provide a legitimate basis to discredit Plaintiff's testimony. The ALJ concluded Plaintiff's activities, such as his ability to prepare meals, perform household chores, go outside, and drive, suggested that he was not functionally impaired to the extent alleged. (AR 635 – 36.) While a claimant need not "vegetate in a dark room" to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987), the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting, *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent they contradict claims of a totally debilitating impairment. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010).

Here, the Court finds the ALJ did not adequately explain why Plaintiff's limited activities contradicted Plaintiff's testimony. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The activities relied upon by the ALJ are activities that do not rise to the level of physical exertion required for full-time competitive employment at the light exertional level. Nor did the ALJ explain how Plaintiff's activities, which he described performing interspersed with rest, (*see* AR 57), undermined Plaintiff's allegations that he was unable to sustain the physical demands of full-time employment. Further, the ALJ cites

Plaintiff's ability to drive, but again fails to discuss Plaintiff's testimony that his wife did most of the driving, even around town. (AR 708, 666.)

Accordingly, the Court finds the ALJ did not make specific findings justifying his decision to discredit Plaintiff's allegations that he was unable to sustain full-time employment on account of disabling symptoms from his physical impairments.

## 2.    Medical Opinions

Plaintiff alleges the ALJ erred by improperly disregarding the medical source opinion of Dr. Austin Graham, Plaintiff's treating provider Defendant counters that the ALJ reasonably evaluated the medical opinion.

### A.    Standard of Review

Under the applicable regulations effective March 27, 2017, the Commissioner is instructed not to "defer or give any specific evidentiary weight…to any medical opinion(s)… including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Rather, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources according to the following factors: supportability; consistency; relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examinations); specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors for evaluating persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Therefore, the ALJ must

explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor looks inward at the medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion(s)…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)…will be." 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The ALJ must "articulate…how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Carmen Claudia S. v. Saul*, 2021 WL 2920614, at *8 (C.D. Cal. July 9, 2021) (quoting *Robert S. v. Saul*, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021)). "In sum, the Commissioner must explain [her] reasoning and specifically address how [she] considered the supportability and consistency of the opinion, and [her] reasoning must be free from legal error and supported by substantial evidence." *Id*. (quoting *Titus L. S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021)) (citations omitted).

The ALJ must address the remaining factors—treatment relationship, specialization, and any other factors—when deciding among differing yet equally

persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b)(2)-(3),
416.920c(b)(2)-(3). The ALJ may address multiple opinions from a single medical source
in one analysis. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (explaining that
"voluminous case records" necessitate source-level articulation).

**B.     Analysis**

Dr. Graham completed a functional evaluation form on January 22, 2019. (AR 558
– 559.) He indicated Plaintiff's impairment was caused by chronic low back pain with
radiation of pain into the left leg, together with fibromyalgia, causing diffuse pain. (AR
558.) In Dr. Graham's opinion, Plaintiff retained a "very limited work capacity," with a
limited ability to walk, stand, and lift, and he would need to be able to change positions
as needed for pain relief. (AR  558 – 559.) Dr. Graham also opined that Plaintiff should
avoid work where safety is dependent on coordinated, consistent physical activity, and
that some cognitive functions would be transiently limited due to pain. (AR 559.) Dr.
Graham further explained that Plaintiff would not be able to complete a 40-hour work
week; had a limited ability to regularly lift up to 10 pounds and could rarely lift or move
up to 25 pounds; would not be able to sit for long periods of time because he would have
to change position; would not be able to stand for long periods of time and would have to
be permitted to sit as needed; could not stoop by bending the body downward or forward
at the spine at the waist; had limited ability to bend by extending the spine backward or
from side to side; could not work under pressure in a fast-paced environment; and had
limited gripping ability. (AR 560 – 561.)

The ALJ found Dr. Graham's opinion that Plaintiff "could do limited walking, standing, and sitting" persuasive, and thus they are "reflected in the RFC." (AR 636.) However, the Court fails to see how Dr. Graham's opinion that Plaintiff had a limited work capacity because of his limited ability to walk, stand and sit are reflected in the RFC, which allows for light work with no other exertional limitations. Light work requires "significant" walking and standing, up to six hours in an 8-hour workday. The ALJ's conclusion is more confounding when, in his prior decision, the ALJ incorporated a sit/stand option based upon Dr. Graham's persuasive opinion testimony about the ramifications of Plaintiff's pain.[13] Here, once again, the ALJ failed to explain how he incorporated the portions of Dr. Graham's opinion that he found persuasive into the RFC.

The ALJ rejected Dr. Graham's opinions regarding Plaintiff's limited reaching and gripping ability, because Dr. Graham did not observe chronic limitations for the requisite 12-month period, and other medical records did not support ongoing symptomology consistent with such limitations. (AR 637.) In making this conclusion, however, the ALJ ignored numerous treatment notes over the course of a greater than 12-month period wherein Plaintiff complained about neck pain,[14] weak grip, and shoulder limitations. (AR 511, 573, 574.) Dr. Graham noted decreased range of motion in both shoulders on January 22, 2019. (AR 572 – 73.) Cervical spine radiographs dated February 26, 2020, documented mild degenerative disc disease from C4 – C7, with trace anterolisthesis of

---

[13] To be clear, the Appeals Council found that the ALJ inadequately explained how the sit/stand option incorporated in the RFC was congruent with Dr. Graham's opinion that Plaintiff would need to be able to change positions as needed for pain relief.

[14] Neck pain was noted in Plaintiff's problem list since July 28, 2015. (AR 512.) He was prescribed tramadol for chronic neck pain on January 13, 2020. (AR 564.)

C6 on C7. (AR 590.) Plaintiff also had a prior surgery to correct a rotator cuff tear. (AR 567.) These objective test results lend support to Dr. Graham's opinions regarding Plaintiff's limited reaching and gripping ability. The ALJ, however, failed to discuss these records.

Accordingly, the Court finds the ALJ's reasons for finding Dr. Graham's opinions unpersuasive are not supported by substantial evidence. Upon remand, the ALJ must reconsider the persuasiveness of Dr. Graham's opinions and give reasons supported by substantial evidence if he intends to reject them.

**3.      RFC**

A claimant's residual functional capacity is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a). The ALJ assesses a claimant's RFC "based on all the relevant evidence in [the] case record." *Id*. § 416.945(a)(1). The ALJ must consider both the medical evidence and "descriptions and observations of the claimant's limitations from the claimant's impairment(s), including limitations that result from the claimant's symptoms, such as pain, provided by" the claimant, family, friends, and other people. *Laborin v. Berryhill*, 867 F.3d 1151, 1153–54 (9th Cir. 2017) (citing 20 C.F.R. § 416.945(a)(3)). The RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate." *Id.* (quoting SSR 96–8p, 61 Fed. Reg. at 34478). In other words, the ALJ must take "the claimant's subjective experiences of pain" into account when determining the RFC. *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014)); *see also Lingenfelter v.*

**MEMORANDUM DECISION AND ORDER  - 25**

*Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) ("[T]he ALJ failed to provide clear and convincing reasons for finding [the claimant's] alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of [the claimant's] RFC.").

Here, the Court finds the ALJ improperly discounted Plaintiff's symptom testimony, as well as the opinions of Dr. Graham. The ALJ's error in discounting both Plaintiff's testimony and Dr. Graham's opinions affected the ALJ's assessment of Plaintiff's RFC, which allowed for light work at step five. Accordingly, the Court finds the ALJ's RFC assessment is not supported by substantial evidence in the record as a whole, and is the product of legal error.

## CONCLUSION

For the reasons stated, the ALJ's decision will be reversed and remanded. In this case, the record does not conclusively show that Plaintiff is disabled, and therefore this matter warrants further proceedings. The basis for reversal is the failure of the ALJ to properly evaluate Plaintiff's symptom testimony and Dr. Graham's medical opinions. The appropriate remedy, therefore, is remand for further proceedings.

**MEMORANDUM DECISION AND ORDER  - 26**

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED that:**

1)      The decision of the Commissioner of Social Security is **REVERSED**.

2)      This action shall be **REMANDED** to the Commissioner for further

proceedings consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand," consistent with

42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

Dated: **February 02, 2024**

Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 27**